THERIOT, J.
*814 The owners and operators of a business appeal a judgment sustaining an objection of res judicata to dismiss their damage claims against neighboring businesses due to the flooding of their business property. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
Nathan and Sharon Mitchell ("the Mitchells") own property and a business called Shapes Gym, located in Donaldsonville, Louisiana. On October 17, 2016, the Mitchells filed a petition for damages against Aaron's, Inc. and Wal-Mart Stores, Inc. (collectively "the defendants"), alleging that on various dates from October 25, 2015 to August 10, 2016, Shapes Gym was "inundated with rain water with about six inches of water in the building." The Mitchells alleged the flooding was caused by the defendants' faulty construction of buildings and subsurface drainage, failure to maintain drainage ditches, and violation of the natural servitude of drainage.
In response to the Mitchells' petition, the defendants filed separate peremptory exceptions raising the objection of res judicata, asserting that the Mitchells had filed a previous lawsuit in the same court alleging the same acts of negligence against the same defendants. As the dismissal of the prior lawsuit against the defendants by summary judgment was affirmed on appeal, the defendants urged the dismissal of the newly-filed petition under the doctrine of res judicata. Following a hearing on the exceptions, the trial court sustained the objection of res judicata and rendered judgment on September 12, 2017, dismissing the Mitchells' claims against the defendants with prejudice. This appeal followed.
ASSIGNMENTS OF ERROR
The Mitchells assign the following as error:
1. The Trial Court committed legal error by granting Defendant[s]-Appellees' Exception of Res Judicata.
2. The Trial Court committed legal error by failing to address Nathan and Sharon Mitchell[s'] damages caused by Appellees' blatant, gross and negligent actions in failing to prevent the flow of water on Shapes Gym and render the servitude less burdensome.
STANDARD OF LAW
The peremptory exception raising the objection of res judicata is based on the conclusive legal presumption that there should be no re-litigation of a thing previously adjudged between the same parties. Cepriano v. B Square Builders, L.L.C. , 2014-1568 (La. App. 1 Cir. 4/24/15), 170 So.3d 1043, 1047. The burden of proving the facts essential to sustaining the objection is on the party pleading the objection. Id. When an objection of res judicata is raised before the case is submitted and evidence is received on the objection, the standard of review on appeal is traditionally manifest error with regard to factual findings of the trial court. Id. However, the res judicata effect of a prior judgment is a question of law that is reviewed de novo on appeal. Id. Because *815 there is a prior judgment in this case, the proper standard of review is de novo.
DISCUSSION
Assignment of Error # 1
In their first assignment of error, the Mitchells argue that the trial court erred in granting the defendants' exceptions of res judicata. The doctrine of res judicata in Louisiana is established by statute, as set forth in La. R.S. 13:4231, which provides:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
Based on the language of La. R.S. 13:4231, the Louisiana Supreme Court has held the following five elements must be satisfied for a finding that a second action is precluded by res judicata: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. Chevron U.S.A., Inc. v. State , 07-2469 (La. 9/8/08), 993 So.2d 187, 194. Since the amendment of La. R.S. 13:4231 in 1990, the "chief inquiry" for determining whether a finding of res judicata is appropriate is whether the two actions arise out of the same "transaction or occurrence." Chevron U.S.A., Inc. , 993 So.2d at 195.
The Mitchells dispute the trial court's finding as to the fifth element; namely, that the cause or causes of action asserted in the second suit arose out of a transaction or occurrence that was the subject matter of the first litigation.[1] The Mitchells argue that as they allege new dates on which damages were sustained in the second suit, those new dates constitute new transactions or occurrences such as to preclude the application of res judicata to the second suit.
In the instant action, the Mitchells asserted that the defendants are liable based on the design and construction of their respective buildings and drainage systems, as well as their failure to properly maintain the drainage systems. It is this alleged negligence that the Mitchells claim, in part, caused the damages they sustained. The Mitchells identify new damages being sustained on several specified dates that occurred primarily after the dismissal of the prior action.[2] In identifying *816 those dates, the Mitchells expressly relate the damages incurred to the occurrence of a rain event.
In Rector v. Hartford Accident & Indemnity Company of Hartford, Connecticut , 120 So.2d 511, 519 (La. App. 1st Cir. 1960), this court recognized that a defendant cannot be held liable for injury that can be construed as being "an act of God"; that is, an injury "due directly and exclusively to natural causes without human intervention and could not have been prevented by the exercise of reasonable care and foresight." (Emphasis added.) This court recognized that "when an Act of God combines or concurs with the negligence of [a] defendant to produce an [i]njury, the defendant is liable if the injury would not have resulted but for his own negligent conduct of omission." Rector , 120 So.2d at 515.
The identified conduct of the defendants - the design and construction of the defendants' respective buildings and drainage systems and the defendant's failure to properly maintain their drainage ditches - is the same conduct identified in the prior action.[3] The new damages sustained by the Mitchells therefore relate to the same conduct that the Mitchells identified in their first suit (i.e., the same "transaction or occurrence"). The Mitchells have not alleged any new or additional construction or changes in design by the defendants that would support a showing of a new transaction or occurrence for which the defendants could be held liable. Instead, the only new occurrences that the Mitchells allege are essentially allegations of new rain events or acts of God. As for the conduct attributable to the defendants, not only was it asserted in the prior lawsuit, the Mitchells also failed to prove that such conduct was negligent in that suit. Thus, we find no error in the trial court's determination that the prior judgments dismissing the Mitchells' claims based on this same conduct against the same defendants in the prior lawsuit, bars this second lawsuit regarding the same conduct.
Assignment of Error # 2
In their second assignment of error, the Mitchells contend that the trial court erred in not addressing whether they were entitled to damages from the defendants based on the defendants' alleged failure to fulfill their respective duties as the owner of a dominant estate. Louisiana Civil Code article 655, describing the natural servitude of drainage,[4] states that "[a]n estate situated below is the servient estate and is bound to receive the surface waters that flow naturally from a dominant estate situated above unless an act of man has created the flow." Additionally, La. C.C. art. 656 states, in pertinent part, that "[t]he owner of the dominant estate situated above may not do anything to render the servitude more burdensome."
On July 24, 2017, the Mitchells filed a "First Supplemental and Amended Petition for Damages," wherein they added allegations regarding the defendants' alleged failure, as owners of a dominant estate, to properly construct buildings and subsurface systems, as well as their alleged failure to properly maintain drainage ditches, including a common ditch, such as "to render the servitude on the servient *817 estate less burdensome." Other than expressly identifying the defendants as owners of a dominant estate, the allegations made by the Mitchells are essentially the same as those made in the first lawsuit; namely, claims alleging that the defendants had improperly constructed buildings and drainage systems on their property and/or failed to properly maintain their drainage systems.
The Mitchells have not alleged that the location of the parties' respective properties has changed in any material respect since the judgment rendered in the first lawsuit, so the defendants' status and duties as owners of a dominant estate must have existed at the time of the first lawsuit. Hence, the addition of allegations regarding the defendants' status as dominant estate owners, alone, is insufficient to defeat the objection of res judicata, as the objection equally applies to a "cause or causes of action" that existed at the time of final judgment in the first litigation. See Chevron U.S.A., Inc. , 993 So.2d at 194.
CONCLUSION
For the above and foregoing reasons, we affirm the trial court's judgment sustaining the peremptory exception raising the objection of res judicata. Costs of this appeal are assigned to the appellants, Nathan and Sharon Mitchell.
AFFIRMED.
GUIDRY, J., dissents in part and assigns reasons.
The doctrine of res judicata is stricti juris, and any doubt concerning application of the principle must be resolved against its application. Kelty v. Brumfield, 93-1142 (La. 2/25/94), 633 So.2d 1210, 1215. With this in mind, I find the Mitchells' allegations regarding the defendants' failure to properly maintain their drainage systems should survive the objection of res judicata. While the Mitchells' original and amended petitions in the instant action fail to identify any specific acts of improper maintenance,[1] because maintenance, by its nature, is not a singular activity, but ongoing, I believe the Mitchells' claim of improper maintenance should survive the objection of res judicata. Thus, to the extent the Mitchells are able to show specific new acts of improper maintenance committed by the defendants that are not related to the design or construction of the defendants' respective maintenance systems, I believe this claim is not barred by the prior summary judgment rendered against them. Accordingly, I believe the trial court erred in sustaining the defendants' objections of res judicata relative to the Mitchells' improper maintenance claims, and for this reason, I respectfully dissent.

In their brief on appeal, the Mitchells concede the first three elements.

There is one date asserted that occurred prior to the signing of the judgment dismissing the Mitchells' prior suit, but after the date of the hearing from the which the judgment stemmed.

In regard to the Mitchells' allegations of improper maintenance, we find that these allegations are the same as their allegations of negligent maintenance in the prior lawsuit.

See La. C.C. arts. 646 and 654, identifying the natural servitude of drainage as a kind of predial servitude.

Notably, such deficiency lends itself more to the dilatory objection of vagueness, or possibly the peremptory objection of no cause of action, in which case, the Mitchells would still be allowed the opportunity to amend their petition to remedy the deficiency rather than face the outright dismissal of their action. See La. C.C.P. arts. 933 -934.