STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2018 CA 1765

GLOBAL MARKETING SOLUTIONS, L.L.C.

VERSUS

CHEVRON U.S.A. INC., EXXON MOBIL CORPORATION,
KEY PRODUCTION COMPANY, INC., SEAL ENERGY COMPANY,
AND WARREN OPERATING COMPANY

Judgment Rendered: September 27, 2019

\*\*\*\*\*\*\*\*

Appealed from the 18th Judicial District Court
In and for the Parish of West Baton Rouge
State of Louisiana
Case No. 1044039

The Honorable Alvin Batiste, Judge Presiding
\*\*\*\*\*\*\*\*

| | |
|---|---|
| Donald T. Carmouche<br>Victor L. Marcello<br>John H. Carmouche<br>William R. Coenen, III<br>Brian T. Carmouche<br>Todd J. Wimberley<br>Ross J. Donnes<br>D. Adele Owen<br>Baton Rouge, Louisiana<br>and<br>Richard J. Ward, Jr.<br>Maringouin, Louisiana | Counsel for Plaintiff/Appellant<br>Global Marketing Solutions, L.L.C. |
| Michael R. Phillips<br>Claire E. Juneau<br>Jeffrey J. Gelpi<br>New Orleans, Louisiana<br>and<br>L. Victor Gregoire<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellee<br>Chevron U.S.A., Inc. |

Joe B. Norman
Kelly Brechtel Becker
James E. Lapeze
Kathryn Zainey Gonski
New Orleans, Louisiana

Counsel for Defendant/Appellee
Exxon Mobile Corporation


David M. Culpepper
New Orleans, Louisiana

Counsel for Defendant/Appellee
Key Production Company, Inc.

\*\*\*\*\*\*\*\*

BEFORE: HIGGINBOTHAM, PENZATO, AND LANIER, JJ.

**LANIER, J.**

In this appeal, plaintiff, Global Marketing Solutions, L.L.C. ("Global"), challenges the district court's judgment sustaining the peremptory exceptions raising the objection of *res judicata* filed by defendants, Chevron U.S.A., Inc. ("Chevron"), Exxon Mobil Corporation ("Exxon"), and Key Production Company, Inc. ("Key"), resulting in the dismissal of Global's claims against defendants, with prejudice. For the reasons set forth below, we affirm the district court's judgment.

## FACTS AND PROCEDURAL BACKGROUND

The underlying history of this case is familiar to this court as it has previously been before us on numerous occasions, dating back to 2010. Pertinent to the instant appeal is our prior holding in **Global Marketing Solutions, LLC v. Blue Mill Farms, Inc.**, 2013-2132 (La. App. 1 Cir. 9/19/14), 153 So.3d 1209, writ denied, 2014-2572 (La. 4/23/15), 173 So.3d 1164 ("**Global I**").

According to the record, Global owns 144 acres of land located in the Bayou Choctaw Oil & Gas Field ("Global Tract"). Global alleges that after purchasing the Global Tract, it discovered that both the surface and subsurface soils and waters of the land had been contaminated by various forms of toxic waste from drilling operations that had been conducted since at least the 1930s. At no time did Global possess mineral rights to the land. The mineral rights had been severed years prior by various mineral leases beginning in the 1930s. Through investigation and discovery, Global learned that the defendants were mineral lessees at various points in the land's history and had conducted drilling operations.

In March 2006, Global filed suit naming as defendants Chevron, Exxon, and Key, among others, asserting contract and tort claims. According to Global, the various defendants were responsible for the contamination of the property at issue. Among other things, Global alleged the following: (1) the land in the Global Tract was contaminated by the defendants as a result of the operation of oil and gas wells

3

at varying times, and under various mineral leases, from 1942 through 2005; (2) the named defendants were negligent and strictly liable; (3) the defendants were in breach of their oil, gas, and mineral leases; (4) the defendants were contractually obligated under the leases to restore the property to its original condition and failed to do so, causing damage to the property; (5) the defendants breached the standards imposed by the Louisiana Civil Code and the Louisiana Mineral Code in failing to act as prudent administrators and failing to restore Global's property to its original condition; and (6) the defendants who were owners of a mineral interest or servitude were obligated to restore the property to its original condition pursuant to La. R.S. 31:22.

In a subsequent supplemental and amending petition, Global added a paragraph alleging that one or more mineral servitude owners for the Global Tract had assigned to Global 99 percent of their claims for damages caused by the oilfield operations on the Global Tract. Global sought to pursue claims against Chevron, Exxon, Key, and other defendants based upon assignments by three mineral servitude owners, Priscilla Davis Gravely, Mary G. Rutrough, and Georgi Davis Duwe.

In response to Global's suit, Chevron, Exxon, Key, and other defendants filed various exceptions including no right of action and no cause of action objections, as well as motions for summary judgment. Following a hearing on the various exceptions, the district court denied the no right of action objection and motions for summary judgment. In reaching its ruling, the district court relied on the opinion of this court found in **Marin v. Exxon Mobil Corporation**, 2008-1724 (La. App. 1 Cir. 9/30/09) 2009WL7004332 (unpublished opinion), which, at the time, was under review by the Louisiana Supreme Court.

Following the district court's ruling, the defendants applied for supervisory writs of review with this court, which were denied with the stipulation that

4

defendants be allowed to re-urge their exceptions should the **Marin** case be reversed by the supreme court. The defendants subsequently applied for supervisory writs to the supreme court. In the interim, **Marin** was reversed, **Marin v. Exxon Mobil Corporation**, 2009-2368 (La. 10/19/10), 48 So.3d 234, as was a similar case out of the fourth circuit court of appeal, **Eagle Pipe and Supply, Inc. v. Amerada Hess Corporation**, 2010-2267 (La. 10/25/11), 79 So.3d 246. Thus, the supreme court granted the defendants' writs and remanded the case to the district court for reconsideration of its previous ruling in light of the **Eagle Pipe** decision.

The defendants re-urged their motions, and on May 29, 2013, the matter came before the district court on remand. After hearing argument from the parties, the district court ruled from the bench as follows:

> [I]t is the same thing that you have here with Global being the subsequent purchaser, and there's no dispute as to any of the facts, I think, in this case, Global being the subsequent purchaser, that an absent -- an assignment or a stipulation pour autrui will have no right to sue for damages that were caused to the property. And we're talking about damages in terms of tort or contract, any damages that occur to the property prior to their purchasing the property. It would have been incumbent upon those owners at that time to seek any damages that were owed to the property.
>
> . . . .
>
> The probably more troubling issues with regard to the assignment of the mineral leases, which again are not in dispute, that it occurred at the time that leases were no longer in existence or had been terminated or had expired. And so just limiting the Court's decision based on that narrow issue of the law, the Court will also find that due to the fact that the assignment took place after the expiration of leases that the assignments, therefore, are not effective.
>
> I will adopt and incorporate, by reference, the reasons set forth in the briefs of the defendant, also along with the oral reasons given today in court as the basis for the Court's ruling in this matter granting the motions for summary judgment.

In a judgment signed on June 24, 2013, the district court granted the motions for summary judgment[1] in favor of the defendants, dismissing Global's claims, with prejudice. The district court noted that the new judgment was made in light of the **Eagle Pipe** decision. Global appealed, arguing, among other things, that the trial court erred "in failing to find that Global [had] the right to seek remediation as an assignee of the rights of the mineral servitude owners."

In **Global I**, this court affirmed the district court's judgment, concluding that mineral leases convey only personal rights. **Global**, 153 So.3d at 1216. Finding no ambiguity in the language of the supreme court's decision in **Eagle Pipe**, this court noted that "an owner's right to sue for damage to his property is a personal right and is held by the person who was the owner at the time the damage was caused" and that the "personal right is not transferred to a subsequent owner without a clear stipulation that the right has been transferred." **Global I**, 153 So.3d at 1215. This court further concluded that the finding in **Marin** paralleled the **Eagle Pipe** principle that rights and obligations under a mineral lease do not transfer to a third party without assignment.[2] **Global**, 153 So.3d at 1216. Following this court's decision in **Global I**, Global sought supervisory review with the Louisiana Supreme Court, which was subsequently denied.

In November 2017, over four years after the rendition of the June 24, 2013 judgment that formed the basis of our decision in **Global I**, Global filed a petition in the instant case ("**Global II**"). As in **Global I**, Global asserted claims for alleged environmental damage to the Global Tract. Global again named Chevron, Exxon, and Key, among others, as defendants, asserting contract and tort claims.

---

[1] The parties had agreed that the previously urged no right of action objections would be reconsidered by the court as motions for summary judgment.

[2] In **Marin**, landowners sued a mineral lessee for damage to the land after the mineral lease had expired. **Marin**, 48 So.3d at 255. Even though the lease was in effect at the time the plaintiffs purchased the property, it had expired by the time the suit was filed, and the plaintiffs were never named as third-party beneficiaries to the lease. The **Marin** court found that the plaintiffs would not have a right to sue the mineral lessee under these circumstances. *Id.*

In **Global II**, Global's suit for damages was based upon the purported assignment of claims from thirty-one alleged mineral servitude owners, including two owners, Priscilla Davis Gravely and Georgi Davis Duwe, whose alleged assignments were at issue in **Global I** and found to be ineffective because the assignments took place after the expiration of the leases.

In response to the petition in **Global II**, Key filed exceptions raising the objections of no cause of action, *res judicata*, and prescription. Exxon raised the objections of *res judicata* and prescription, and adopted the exceptions filed by the other defendants "to the extent that those [e]xceptions apply to [Exxon]." Chevron filed exceptions raising the objections of *res judicata*, no right of action, and prescription. Like Exxon, Chevron also adopted any exceptions filed by other defendants that may apply to it.

A hearing on the exceptions was held on August 29, 2018. According to the minutes, all exhibits previously filed and attached to the memorandums were filed into evidence, and Global filed three additional exhibits into evidence. The district court agreed to hear argument on the *res judicata* exceptions first. After hearing argument from counsel, the district court sustained the exceptions raising the objection of *res judicata*. On September 13, 2018, the district court signed a judgment as follows:

> IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Exceptions of Res Judicata filed by Defendants Exxon Mobil Corporation, Key Production Company, Inc., and Chevron U.S.A. Inc., be and are hereby GRANTED, and accordingly all claims of Plaintiff Global Marketing Solutions, L.L.C. against Exxon Mobil Corporation, Key Production Company, Inc., and Chevron U.S.A. Inc., be and are hereby dismissed with prejudice, at Global Marketing Solutions, L.L.C.'s costs.
>
> IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Exceptions of No Cause of Action filed by Defendants Exxon Mobil Corporation and Key Production Company, Inc. and the Exception of No Right of Action filed by Defendant Chevron U.S.A. Inc., be and are hereby deemed moot.

7

It is from this judgment that Global has appealed, assigning the following specifications of error for our review:

1. The [district] court committed error in granting the exceptions of *res judicata*.

2. The [district] court committed error in applying the legal requirements of *res judicata* as set forth in La. R.S. 13:4231.

3. The [district] court committed error in failing to find that the causes of action asserted in *Global II* did not arise out of the same transactions or occurrences as the causes of action in *Global I*.

4. The [district] court committed error in failing to find that Global's rights to bring claims for restoration under the *Global II* assignments were not "actually litigated" or "essential" to the final judgment in *Global I*.

5. The [district] court committed error in failing to find that the cause or causes of action asserted in *Global II* did not exist at the time of the final judgment in *Global I*.

6. The [district] court committed error in failing to find that Global appears in different capacities in *Global I* and *Global II*.

7. The [district] court committed error in failing to find that a mineral servitude owner has the right to enforce the end of the lease restoration obligations of a mineral lessee who has damaged property burdened by the mineral servitude, and that this right is assignable after the mineral lease expires.[3]

### *RES JUDICATA*: ISSUE PRECLUSION

Louisiana Revised Statutes 13:4231 provides:

Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:

(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.

(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the

---

[3] We note that assignments of error numbers three and five address the elements of claim preclusion, which are not at issue in this instant case and, thus, will not be discussed herein. Rather, our discussion will focus solely on the elements of issue preclusion, which is what was argued below and what the district court considered in sustaining the defendants' *res judicata* exceptions.

transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.

(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

*Res judicata* is an issue and claim preclusion device found both in federal law and in state law. The purpose of both federal and state law on *res judicata* is essentially the same—to promote judicial efficiency and final resolution of disputes by preventing needless relitigation. **Terrebonne Fuel & Lube, Inc. v. Placid Refining Co.**, 95-0654 (La. 1/16/96), 666 So.2d 624, 631.

Louisiana Revised Statutes 13:4231 embraces the broad usage of the phrase "*res judicata*" to include both claim preclusion (*res judicata*) and issue preclusion (collateral estoppel).[4] Under claim preclusion, the *res judicata* effect of a judgment on the merits precludes the parties from relitigating matters that were or could have been raised in that action. Under issue preclusion or collateral estoppel, however, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties. Thus, *res judicata* used in the broad sense has two different aspects: 1) foreclosure of relitigating matters that have never been litigated but should have been advanced in the earlier suit; and 2) foreclosure of relitigating matters that have been previously litigated and decided. **Mandalay Oil & Gas, L.L.C. v. Energy Development Corp.**, 2001-0993 (La. App. 1 Cir. 8/4/04), 880 So.2d 129, 135-136, writ denied, 2004-2426 (La. 1/28/05), 893 So.2d 72.

---

[4] Although prior to 1991, Louisiana law on *res judicata* was substantially narrower than federal law, the 1991 amendments expanded the law to include issue preclusion. See Comment(b)—1990, La. R.S. 13:4231, which provides, in pertinent part, that issue preclusion "serves the interests of judicial economy by preventing relitigation of the same issue between the same parties."

Under issue preclusion, once a court decides an issue of fact or law necessary to its judgment, that decision precludes relitigation of the same issue in a different cause of action between the same parties. **Sanchez v. Georgia Gulf Corp.**, 2002-1617 (La. App. 1 Cir. 8/13/03), 853 So.2d 697, 706. Thus, under La. R.S. 13:4231(3), the three requirements for issue preclusion are: (1) a valid and final judgment; (2) identity of the parties; and (3) an issue that has been actually litigated and determined if its determination was essential to the prior judgment. **Horrell v. Horrell**, 99-1093 (La. App. 1 Cir. 10/6/00), 808 So.2d 363, 373, writ denied, 2001-2546 (La. 12/7/01), 803 So.2d 971.

The doctrine of *res judicata* is not discretionary and mandates the effect to be given final judgments. **Diamond B Const. Co., Inc. v. Department of Transp. and Dev.**, 2002-0573 (La. App. 1 Cir. 2/14/03), 845 So.2d 429, 435. The burden of proving the facts essential to sustaining the objection is on the party pleading the objection. **Union Planters Bank v. Commercial Capital Holding Corp.**, 2004-0871 (La. App. 1 Cir. 3/24/05), 907 So.2d 129, 130. If any doubt exists as to its application, the exception raising the objection of *res judicata* must be overruled and the second lawsuit maintained. **Wicker v. Louisiana Farm Bureau Casualty Insurance Company**, 2018-0225 (La. App. 1 Cir. 9/21/18), 257 So.3d 817, 821-822. The concept should be rejected when doubt exists as to whether a plaintiff's substantive rights actually have been previously addressed and finally resolved. **Patin v. Patin**, 2000-0969 (La. App. 1 Cir. 6/22/01), 808 So.2d 673, 676.

When an objection of *res judicata* is raised before the case is submitted and evidence is received on the objection, the standard of review on appeal is traditionally manifest error with regard to factual findings of the district court. **Cepriano v. B Square Builders, L.L.C.**, 2014-1568 (La. App. 1 Cir. 4/24/15), 170 So.3d 1043, 1047. However, the *res judicata* effect of a prior judgment is a

question of law that is reviewed *de novo* on appeal. **Mitchell v. Aaron's, Inc.,** 2018-0131 (La. App. 1 Cir. 9/21/18), 257 So.3d 812, 814-815.[5]

As to the first requirement of issue preclusion, for purposes of *res judicata*, a valid judgment is one rendered by a court with jurisdiction over both the subject matter and the parties after proper notice was given, and a final judgment is one that disposes of the merits in whole or in part. **Oliver v. Orleans Parish School Bd.,** 2014-0329 (La. 10/31/14), 156 So.3d 596, 612, cert. denied, ___ U.S. ___, 135 S.Ct. 2315, 191 L.Ed.2d 979 (2015). We note that the June 24, 2013 judgment of the district court, which was affirmed by this court in **Global I,** disposed of the merits of all of Global's claims, dismissing Global's claims against defendants, with prejudice. Moreover, it is undisputed by the parties that the underlying judgment, upon which defendants' *res judicata* exceptions are based, is a valid and final judgment. Thus, the first element of issue preclusion is present herein.

The second requirement for issue preclusion is identity of the parties. This requirement does not mean that the parties must have the same physical identity, but that the parties must appear in the same capacities in both suits. **Wicker,** 257 So.3d at 823. An identity of parties exists whenever the same parties, their successors, or others appear, so long as they share the same quality as parties. **Welch v. Crown Zellerbach Corp.,** 359 So.2d 154, 156 (La. 1978); **Mandalay Oil & Gas, L.L.C.,** 880 So.2d at 140. Identity of parties is satisfied when a privy of one of the parties is involved. In its broadest sense, "privity" is the mutual or successive relationship to the same right of property, or such an identification in

---

[5] We note that in response to Global's appeal herein, Key argues that the applicable appellate standard of review is the manifest error/clearly wrong standard of review. However, our review of the reasons given by the district court at the end of the August 29, 2018 hearing reveals that the district court did not make any factual findings, but rather made a legal conclusion based on the decision in **Global I.** Therefore, we will conduct a *de novo* review to determine if the district court was legally correct in sustaining the *res judicata* exception. See **Pierrotti v. Johnson,** 2011-1317 (La. App. 1 Cir. 3/19/12), 91 So.3d 1056, 1063-1064.

interest of one person with another as to represent the same legal right. **Smith v. LeBlanc**, 2006-0041 (La. App. 1 Cir. 8/15/07), 966 So.2d 66, 78.

Global argues that the assignments in **Global I** contained resolutory conditions that negated the assignments in the event the assigned claims were dismissed. Thus, Global maintains, because the **Global I** assignments were declared void and without effect, Global did not appear in **Global I** in the capacity of an assignee of the rights of the mineral servitude owners. By contrast, Global asserts that in **Global II**, Global appears in the capacity of an assignee. The issue of the effectiveness of the assignments would not have been before the district court but for the fact that Global appeared in **Global I** not only in its capacity as the surface owner, but also in its capacity of an assignee of the rights of the mineral servitude owners. Thus, Global's capacity in both suits is the same.

Moreover, even assuming that the present mineral servitude owners were not actually parties in **Global I**, the *res judicata* effect of the June 24, 2013 judgment still bars Global's attempt to relitigate the issue in **Global II**. The interests of the present mineral servitude owners were adequately represented by Global and its assignors in **Global I**. The preclusive effect of a judgment binds the parties to the action, as well as those nonparties who are deemed "privies" of the parties in circumstances where "the nonparty's interests were adequately represented by a party to the action, who may be considered the 'virtual representative' of the nonparty, because the interests of the party and the nonparty are so closely aligned." **Mandalay Oil & Gas, L.L.C.**, 880 So.2d at 142. The second requirement of issue preclusion is met in this case.

The final requirement for issue preclusion is that the issue must be one that has been actually litigated and determined in the prior action, and its determination must have been essential to the prior judgment. Global argues that the terms of the **Global I** assignments are entirely different from the terms of the **Global II**

12

assignments and that Global's right to bring this action based on the **Global II** assignments was not "actually litigated" in **Global I**. Defendants counter that the only pertinent fact for purposes of the preclusive effect of the prior judgment is that like the assignments in **Global I**, the assignments acquired in **Global II** were acquired after the mineral leases at issue expired. Thus, defendants maintain, pursuant to the valid, final judgment in **Global I**, the **Global II** assignments are likewise ineffective as a matter of law, regardless of their individual terms, and the district court correctly found that Global's claims were barred by *res judicata*. We agree.

Although the ruling in **Global I** did not address the specific terms of the assignments, the fact remains that they were given after the leases had expired. In **Global I**, the district court noted that the assignments "occurred at the time that leases were no longer in existence or had been terminated or had expired" and that, accordingly, the assignments were not effective. Thereafter, in its judgment signed on September 13, 2018, the district court granted defendants' motions, dismissing all of Global's claims against them, with prejudice. Accordingly, the issue before us in the instant matter, *i.e.*, whether Global has a right to sue defendants based on assignments obtained from mineral servitude owners after the mineral leases expired, was clearly litigated in **Global I** and essential to the district court's dismissal of Global's claims therein. Moreover, the district court's ruling was affirmed on appeal to this court, and Global's subsequent writ application to the Louisiana Supreme Court was denied. Accordingly, the final requirement of issue preclusion is met.

### EXCEPTIONAL CIRCUMSTANCES EXCEPTION

Louisiana Revised Statutes 13:4232 sets forth exceptions to the general rule of *res judicata* and provides, in pertinent part, that a judgment does not bar a subsequent action when "exceptional circumstances justify relief from the *res*

*judicata* effect of the judgment." La. R.S. 13:4232(A)(1). The discretion to grant relief from the judgment for exceptional circumstances is necessary to allow the court to balance the principle of *res judicata* with the interests of justice. The court must exercise this discretion on a case-by-case basis and grant such relief only in truly exceptional cases, otherwise the purpose of *res judicata* would be defeated. La. R.S. 13:4232, comment—1990. Global argues that this case presents obvious convoluted factual and legal scenarios that qualify as exceptional circumstances.

This court addressed the application of this provision in **Chaisson v. Oceanside Seafood**, 97-2756 (La. App. 1 Cir. 6/29/98), 713 So.2d 1286. After analyzing various cases in which the exceptional circumstances provision had been considered, this court stated:

> These cases suggest that the "exceptional circumstances" provision is likely to be applied most often in complex procedural situations, in which litigants are deprived of any opportunity to present their claims because of some quirk in the system which could not have been anticipated. "Exceptional circumstances" might also be applied to factual scenarios that could not possibly be anticipated by the parties or decisions that are totally beyond the control of the parties.

**Chaisson**, 713 So.2d at 1289.

The case before us does not involve such a situation. Global had an opportunity to fully present its case in **Global I**. Global is now simply challenging the correctness of not only the district court's ruling in **Global I**, but also this court's ruling in affirming the district court's judgment and the supreme court's denial of its application for supervisory review. The purpose of *res judicata*—to promote judicial efficiency and final resolution of disputes by preventing needless relitigation—would be defeated if relief from the *res judicata* effect of the **Global I** judgment were granted in this matter. See **Terrebonne Fuel & Lube, Inc.**, 666 So.2d at 631. Therefore, we decline to apply the exceptional circumstances provision under these circumstances.

14

## DECREE

For the above and foregoing reasons, we affirm the district court's September 13, 2018 judgment, sustaining the *res judicata* exceptions filed by defendants and dismissing, with prejudice, all claims of Global Marketing Solutions, L.L.C. against defendants. We assess all costs associated with this appeal against Global Marketing Solutions, L.L.C.

**AFFIRMED.**